**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AUTO-OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:11-cv-01192-JEO** |
| | ) | |
| **TOXEY CONSTRUCTION COMPANY, INC., DANNY and DEBRA GRAHAM,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This is a declaratory judgment action in which plaintiff Auto-Owners Insurance Company

seeks a determination of the rights of the parties and a declaration that it owes no duty to

indemnify defendant Toxey Construction Company, Inc., in an underlying state action.  (Doc. 1).

The action is currently before the court on a motion for summary judgment by Auto-Owners.

(Doc. 29).[1]  For the reasons stated in this opinion, the motion is due to be granted.

**I.  FACTS AND PROCEDURAL HISTORY**

The instant action arises from a dispute about insurance coverage for a home Toxey

Construction built for Danny and Debra Graham in McCalla, Alabama.  The Grahams moved

into the home in April 2007, and began noticing cracks in the floor of the basement shortly

thereafter.  (Doc. 29-10, Grahams' Dep., at 28:22, 49:15-21).  In July and August 2007, the

Grahams informed Toxey Construction of cracks in the basement floor and the interior sheet-

---

[1]References herein to "Doc. __" are to the electronic numbers assigned by the Clerk of the Court.  References to page numbers are also to the electronic page numbers found at the top of the document.  References to the depositions are to the page numbers and lines on the original document, not the electronic numbers.

rock walls.  (Doc. 29-10, Grahams' Dep., at 29-31).  Toxey Construction responded by repairing the sheet-rock and repainting the affected walls.  (*Id*. at 33).  In September or October 2007, the Grahams complained to Toxey Construction about additional cracking.  (*Id*. at 35-36).

Effective October 11, 2006, to October 11, 2007, Toxey Construction held a commercial general liability insurance policy ("the Policy") from Auto-Owners.  (Docs. 29-5 & 29-13).  Toxey Construction had obtained the policy through independent insurance agent Doug Coppock.  (Doc. 29-13 at 2-3).  As an independent agent with Patrick Insurance Agency, Inc., Coppock obtains insurance coverage for clients through a variety of insurance companies, and it is undisputed that he was not an employee of Auto-Owners at all relevant times.  (Docs. 29-13 at 2 & 29-14 at 2).

On December 10, 2007, Toxey Construction notified Coppock of the cracks in the brick and the sheet-rock of the Grahams' home.  (Doc. 29-13 at 3).  Mr. Toxey testified that Coppock replied, "Don't worry about it.  I am taking care of you, I am your agent, don't worry about it."[2] (Doc. 29-3 at 17:19-21).  Coppock subsequently generated a General Liability Notice of Occurrence/Claim and then transmitted the notice to Auto-Owners.  (Docs. 29-13 at 3 & 29-5 at 51).  In response, Auto-Owners hired Donan Engineering to investigate the cause of the cracking and to determine the seriousness of the problems.  (Docs. 29-5 at 52; 29-14 at 8).

Donan Engineering inspected the home in December 2007, and concluded that, "based on what is known at this time ... the house is suffering from differential settlement" and that "current drought conditions may have an impact on the differential settlement."  (*Id*. at 60).  Donan

---

[2]Toxey Construction was an Alabama corporation for which Mr. Roy Toxey served as president.  (Doc. 29-3 at 24:15-22).

Engineering also noted that "[t]he loose soil and voids along with improper drainage allow storm water to easily flow down the backfilled foundation walk to the footers." (*Id.*)

On January 25, 2008, a Field Claims Representative for Auto-Owners, Jason McLendon, sent Toxey Construction a coverage-position letter for the problems at the Grahams' home. (Doc. 29-9). The letter states that the "initial coverage determination" was that "no coverage is available under [the] policy" because the problems appeared to have occurred from differential settlement, a policy exclusion. (Doc. 29-9 at 1). McLendon concluded the letter by stating: "All rights, terms, conditions and exclusions in your policy are in full force and effect and are completely reserved. **If you receive suit papers from the homeowner, please forward them immediately to us for our review and analysis for potential insurance coverage**." (*Id.* at 6) (emphasis original).

On April 8, 2008, an attorney for the Grahams sent a demand letter to Toxey Construction, seeking repair of a variety of problems with the Grahams' home. (Doc. 29-12 at 49). It appears that, shortly thereafter, Toxey Construction hired a subcontractor to install stabilization piers beneath the Grahams' home. (Doc. 29-3 at 157-62). However, on August 5, 2008, an attorney for the Grahams sent another letter to Toxey Construction's attorney to express the Grahams' frustrations with the repairs. (Doc. 29-12 at 51). The letter concludes by stating that the Grahams intend to sue Toxey Construction if the parties cannot agree on a time-frame for completion of the repairs. (*Id.*) Six days later, August 11, 2008, Toxey Construction's attorney sent a letter to Auto-Owners stating Toxey Construction's disagreement with the denial of the claim for the problems at the Grahams' home. (Doc. 29-9 at 7). The letter advises Auto-Owners that Toxey Construction's engineer found that the problems resulted from a subcontractor's

failure to properly install the foundation.  (*Id*.)

On August 25, 2008, the Assistant Manager for Auto-Owners, Jay Lanin, responded to the August 11, 2008, letter from Toxey Construction stating that Auto-Owners denies the claim under the policy exclusion for "faulty workmanship."  (Doc. 29-9 at 17).  In the letter, Lanin states that "[t]he entire home including work done by Mr. Toxey's subcontractor is considered their work."  (*Id*. at 13, 17).  Lanin concluded the letter by stating:  "**If you receive suit papers for this matter, please forward to us for review for possible insurance coverage**."  (*Id*. at 17) (emphasis original).

On December 11, 2008, the Grahams sued Toxey Construction and Roy Toxey in the Circuit Court of Jefferson County, seeking damages for problems with their home and for physical injury, mental anguish, and emotional distress.  (Doc. 29-11).  Ms. Toxey testified that, immediately after being served with the lawsuit, she telephoned Coppock and said "you told me to notify you if we were receiving lawsuit papers.  We are and [our attorney] is handling it for us."  (Doc. 29-3, Toxey's Dep., at 147:18-22; 149:1-3).  According to Ms. Toxey, Coppock responded, "I will check into it again," and that it was her "understanding" that "because he was [their] agent and he told [her] to contact him, he would contact Auto-Owners."  (*Id*. at 149:8-13). Additionally, Ms. Toxey testified that because "[Coppock] did not have [Auto-Owners] contact [her] about an attorney," she hired an attorney to represent Toxey Construction and "turned everything over" to that attorney.  (*Id*. at 149:19-20, 155:8-16).  Ms. Toxey further testified that she never submitted a copy of the lawsuit to Coppock because "at that time [their attorney] was handling everything" and she believed that Coppock should have requested a copy, or Toxey Construction's attorney should have sent Auto-Owners and/or Coppock a copy of the lawsuit.

(*Id*. at 148:23-149:1, 153:12-13, 154:15-18).  There is no record evidence demonstrating that Toxey Construction's attorney notified Auto-Owners of the Grahams' lawsuit.

The Grahams subsequently amended the state-court complaint on April 30, 2009, and February 25, 2010.  (Doc. 29-4 at 3, 19).  Ultimately, the parties arbitrated the matter, and, on January 18, 2011, the arbitrator awarded $694,924.80 in favor of the Grahams and against Toxey Construction.  (Doc. 29-9 at 41-42).  That day, the Grahams' attorney informed Auto-Owners of the award and, according to Auto-Owners, this was the first time it learned of the Grahams' lawsuit.  (Doc. 29-14 at 9).  Approximately one and a half months later, on March 7, 2011, the circuit court entered a judgment in favor of the Grahams and against Toxey Construction based on the arbitration award.  (Doc. 29-9 at 43).

One month later, April 7, 2011, Auto-Owners filed this declaratory judgment action against Toxey Construction and the Grahams, seeking a determination of "the rights and obligations of the parties under the policy of insurance as they relate to the arbitration award" and a declaration that it has no duty to pay the state-court judgment.  (Doc. 1 at 2 ¶¶ 1-2).  Two days later, April 9, 2011, Auto-Owners notified Coppock of the state-court judgment.  (Doc. 29-13 at 4).  Contrary to Ms. Toxey's testimony that she immediately informed Coppock of the lawsuit, Coppock testified that he first learned of the lawsuit on April 9, 2011.  (*Id*.)  Coppock testified: "At no time [after December 10, 2007,] did Toxey Construction or any of its employees or anyone else communicate to [him] ... that the Grahams had filed a lawsuit against Toxey Construction Company, or that Toxey Construction Company had otherwise been sued."  (*Id*.)  Nearly six weeks later, May 24, 2011, Toxey Construction assigned all its rights against Auto-Owners to the Grahams.  (Doc. 29-4 at 25).  Toxey Construction and the Grahams answered the

Complaint by denying all claims and asserting state-law counterclaims against Auto-Owners for breach of contract, bad faith, and promissory fraud.[3]  (Doc. 11 at 5-8).

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.  "[T]he judge's function is not himself

---

[3]Toxey Construction and the Grahams also alleged "counterclaims" of negligence and fraud against Donan Engineering.  (Doc. 11 at 7-8).  However, Donan Engineering is a third-party to the action, and Toxey Construction and the Grahams failed to serve the pleadings on Donan Engineering within 120 days of filing the claim.  *See* FED. R. CIV. P. 4(m).  Accordingly, the negligence and fraud claims against Donan Engineering are due to be dismissed.

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 259). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; accord *Spence v. Zimmerman*, 873 F. 2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Commn'c, Inc*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254). Nevertheless, credibility determinations, the weighing of evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F. 3d at 643. Finally, "[s]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)

7

(citations omitted).

### III.   ANALYSIS

**A.   Declaratory Judgment**

The threshold issue in this case is whether Toxey Construction's failure to notify Auto-Owners of the Grahams' lawsuit breached the Policy and, therefore, negates Auto-Owners' duty to indemnify Toxey Construction.  The undisputed evidence indicates that Auto-Owners first received <u>notice of a claim</u> for problems at the Grahams' house on December 10, 2007, that the Grahams sued Toxey Construction and Roy Toxey on December 11, 2008, and that Auto-Owners first received <u>notice of the Grahams' lawsuit</u> from the Grahams' attorney after pronouncement of the arbitration award on January 18, 2011.  (Doc. 29-13 at 3 & Doc. 29-14 at 9).  Thus, more than two years passed between the commencement of the lawsuit against Toxey Construction and Auto-Owners receiving notification of the lawsuit.

The Policy requires Toxey Construction to notify Auto-Owners of a lawsuit as soon as practicable:

2.      Duties In The Event of Occurrence, Offense, Claim or Suit

a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

i.      How, when and where the "occurrence" or offense took place;

ii.     The names and addresses of any injured persons and witnesses; and

iii.    The nature and location of any injury or damage arising out of the "occurrence" or offense.

8

        b.      <u>If any claim is made or "suit" is brought against any insured, you must</u>:

                <u>i.</u>      <u>Immediately record the specifics of any claim or "suit" and the date received; and</u>

                <u>ii.</u>     <u>Notify us as soon as practicable.</u>

        c.      <u>You and any other involved insured must</u>:

                i.      <u>Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit"</u>;

                ii.     Authorize us to obtain records and other information;

                iii.    Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

                iv.    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

      d.      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without out consent.

(Doc. 29-13 at 31) (emphasis added).  Additionally, the January 25, 2008, letter instructed Toxey Construction to immediately forward any suit papers to Auto-Owners, and the August 25, 2008, letter instructed Toxey Construction's attorney to immediately forward any suit papers to Auto-Owners.  (Doc. 29-9 at 6, 17).

Alabama courts have consistently held that "the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract."  *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989).

The term "as soon as practicable" in the notice provisions is construed as a relative term, meaning that "notice must be given within a reasonable time in view of the facts and circumstances of the case." *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983).  In the event an insured delays notification to the insurer, the Alabama Supreme Court has held that only two factors bear on the issue of reasonableness:  the length of the delay and the reasons for the delay.  *Travelers Indem. Co. of Connecticut v. Miller*, ___ So. 3d ___, ___ 2011 WL 6004619, *3 (Ala. Dec. 2, 2011)(citing *United States Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d 72, 75 (Ala. 2000)).  "Prejudice to the insurer from any such delay in providing notice is not a factor."  *Id*.  Importantly, the purpose of these notice provisions is "to give the insurer the opportunity to control litigation on which its contractual liability hinges." *Travelers Indem.*, 2011 WL 6004619 at *3 (citing *North River Ins. Co. v. Overton*, 59 So. 3d 1 (Ala. 2010)).

As a matter of law, the Alabama Supreme Court has held that "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." *Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 536 (Ala. 2008).  Therefore, where the delay in providing notice exceeds five months, the insured must submit evidence indicating a reasonable excuse.  "Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question ... for the [trier of fact]."  *Id.* at 535 (quotations marks and citations omitted).  However, on the other hand, if the "insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay," the court should find as a matter of law that there has been a breach of the notice provisions of the policy. *Southern*

10

*Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882-83 (Ala. 1976) (quotation marks and citations omitted). *See also Reeves*, 539 So. 2d 252 at ("there are certain instances in which the excuse offered by the insured to justify the delay are unreasonable as a matter of law").

Here, Toxey Construction's delay in providing notice of the lawsuit to Auto-Owners is approximately two years. The evidence before the court indicates that the Grahams served the state-court summons and complaint on Toxey Construction within a month of filing the action on December 11, 2008, and that Auto-Owners received notice of the action on January 18, 2011. (Doc. 29-9 at 36-39). In light of this lengthy delay, twenty-five months, the analysis focuses on whether Toxey Construction has created a genuine issue of fact as to reasonableness for the delay. *See Nationwide Mut. Fire Ins.*, 10 So. 3d at 535.

To argue that the instant delay was reasonable, defendants contend that Toxey Construction reasonably believed that it had fulfilled its obligations under the Policy because Ms. Toxey informed Coppock, the independent insurance agent, and Toxey Construction's attorney of the lawsuit. (Doc. 30 at 9). Relatedly, Toxey Construction contends that it reasonably relied on Coppock's alleged representations that he would "check into" the lawsuit. (*Id*. at 10). As an alternate argument, Toxey Construction asserts that it never received a copy of the Policy and, "therefore, Auto-Owners cannot now enforce provisions of the policy which the Toxey's were not aware of." (*Id*.)

Upon careful consideration of the disputed evidence and controlling law, the court finds that Toxey Construction's delayed notification to Auto-Owners is unreasonable as a matter of law. The court recognizes that defendants submit evidence indicating that Coppock told the Toxeys "to notify him of the lawsuit," that Ms. Toxey notified Coppock and Toxey

11

Construction's attorney of the lawsuit, and that Coppock said he would "check into it again." (Doc. 29-3 at 147-55).  However, the court finds that it cannot reasonably be said that these facts justify the more than two-year delay in notification to Auto-Owners.  In reaching this conclusion, the court emphasizes that the Policy and January 25, 2008, letter clearly advised Toxey Construction to notify Auto-Owners of any lawsuit and that the Alabama Supreme Court has held that "where a named insured not only has possession of the policy but also is represented by counsel, ignorance of policy terms resulting from a failure to read the policy does not, as a matter of law, constitute an acceptable excuse for noncompliance with the notification requirements of the policy."  *Downey v. Travelers Prop. Cas. Ins. Co.*, 74 So. 3d 952, 957 (Ala. 2011).

Further, the delayed notification is also not excused by Toxey Construction's assertion that it may not have received a copy of the Policy.  As pointed out by Auto-Owners, under Alabama law, delivery to the agent of the insured is construed as delivery to the insured and, here, Patrick Insurance Agency (Coppock's agency) is clearly listed as the agency on the Policy. (Doc. 29-4 at 50).  Further, it is undisputed that Patrick Insurance Agency received a copy of the Policy and generated a memo to Toxey Construction, stating: "Enclosed is your renewal policy. Please review the coverages and if you have questions, please contact the agency."  (Doc. 29-4 at 49).  *See New Hampshire Ins. Co. v. Blue Water Off Shore, LLC*, 2009 WL 792530, *13  (S.D. Ala. Mar. 23, 2009) ("For purposes of Section 27-14-19, however, delivery to the agent of the insured is delivery to the insured.") (citing *S. Foodservice Mgmt., Inc. v. Am. Fid. Assurance Co.*, 850 So. 2d 316, 321 (Ala. 2002)).  For these reasons, the court finds that Toxey Construction's lack of inquiry into the provisions of the Policy and the resulting the delay of more than two-years in notifying Auto-Owners is unreasonable as a matter of law, and, therefore, the motion is

due to be granted.

**B.     Counterclaims**

Auto-Owners also moves for summary judgment on the counterclaims by Toxey Construction and the Grahams for breach of contract, bad faith, and promissory fraud.  (Doc. 29 at 21-22).  As an initial matter, Toxey Construction and the Grahams respond that they "make no contentions concerning the promissory fraud allegations."  (Doc. 30 at 14).  Accordingly, Auto-Owners is entitled to summary judgment on the promissory-fraud claim.

As to the breach-of-contract and bad-faith counterclaims, Auto-Owners contends that it is entitled to summary judgment because it lacked any duty to defend or indemnify Toxey Construction.  (Doc. 29 at 21).  For the reasons discussed above, the court finds that Auto-Owners is released from its duty to defend or indemnify Toxey Construction.  Therefore, Auto-Owners is entitled to summary judgment on the breach-of-contract and bad-faith counterclaims.

## IV.   CONCLUSION

For the reasons stated above, Auto-Owners Insurance Co.'s Motion for Summary Judgment (doc. 29) is due to be granted as to all claims.  The court finds that there is no duty to indemnify the defendants under the circumstances.  Additionally, the claims against Donan Engineering are due to be dismissed without prejudice.  The defendants' motion to set a hearing (doc. 32) is moot.[5]  A separate order will be entered.

**DONE**, this 23rd day of May, 2012.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge

_____

[5]The court finds a hearing unnecessary due to the quality of the briefing by the parties.